**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**COPART OF CONNECTICUT, INC.**                                          **PLAINTIFF**

**V.**                                          CIVIL ACTION NO. 3:23-cv-192-HTW-LGI

**CITY OF CANTON, MISSISSIPPI;**
**BOARD OF ALDERMEN FOR THE CITY OF CANTON; in**
**their individual and official capacities; THE CITY OF CANTON**
**ZONING COMMISSION; in their individual and**
**official capacities; WILLIAM TRULY, JR., in his individual**
**capacity and official capacity as Mayor;**
**and THE CITY OF CANTON**
**ZONING ADMINISTRATOR/ BUILDING OFFICIAL,**
**in his or her individual capacity and official capacity**                                          **DEFENDANTS**

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff Copart of Connecticut, Inc. ("Copart") files this Complaint against the City of Canton, Mississippi (the "City"); the Board of Aldermen for the City of Canton, in their individual and official capacities (the "Board"); the City of Canton Zoning Commission, in their individual and official capacities (the "Zoning Commission"); William Truly, Jr., in his individual capacity and capacity as Mayor of the City of Canton ("Mayor"); and the City of Canton's Zoning Administrator /Building Official, in his or her individual capacity and official capacity ("Zoning Administrator").[1]

**INTRODUCTION**

1.      In May 2020, Copart executed a contract to buy two parcels of real property located at 141 Yandell Avenue in Canton, Mississippi, most of which was zoned I-2 Heavy Industrial (the "Property").

---

[1]    It is the undersigned's understanding from speaking with the City of Canton's Building & Development Department that the position of Zoning Administrator /Building Official is currently vacant.

2.     In connection with the purchase of the Property, and as part of its due diligence, Copart requested a zoning assessment from the Zoning Administrator[2] confirming, among other things, whether Copart's intended use of the Property conformed with the permitted uses in Canton's I-2 Heavy Industrial or other applicable zoning district, or whether a special exception would be required.

3.     The Zoning Administrator determined that Copart's intended use of the Property conformed with the existing zoning restrictions and, on July 2, 2020, issued a formal letter to Copart confirming the same (the "Zoning Letter").

4.     Based on the Zoning Administrator's determination, as memorialized in the Zoning Letter, Copart closed on the property in January 2021 for a purchase price of $350,000.00.

5.     Thereafter, Copart applied for work and demolition permits so it could begin cleaning up the Property. When the Mayor and the Board learned of this, they decided that Copart was not welcome and began a campaign targeted at precluding Copart from developing and otherwise enjoying the Property. Those obstructive efforts included issuing a baseless cease-and-desist letter, ordering the issuance of a facially invalid stop-work order, and hijacking various proceedings to poison them with irrelevant, emotional, and, sometimes, flatly false allegations that ultimately led to arbitrary and capricious denials of Copart's petitions and appeals.

6.     These efforts continue to date: The facially invalid stop-work order remains in place, and Defendants have made clear that any attempt by Copart to develop or operate on the Property will be met with further repercussions.

---

[2]     Under the City of Canton's Uniform Development Code ("CUDC"), the individual who holds the title of Zoning Administrator also serves as the Building Official by virtue of position. At the time, Mr. Jimmy Smith held this position.

7.    Defendants' obstructive and adverse actions against Copart lack legal support and continue to deny Copart equal treatment and true due-process protections.

8.    Accordingly, Copart now seeks relief from this Court confirming that Copart's intended use of the Property is permitted by right and is vested, consistent with the allowable uses in the I-2 Heavy Industrial District under the CUDC and Comprehensive Plan, as previously determined by the Zoning Administrator; enjoining Defendants from further obstructing Copart's attempts to construct its perimeter fence and develop the Property; and awarding damages for Defendants' wrongful conduct.

## PARTIES

9.    Plaintiff Copart is a Delaware corporation with its principal place of business located at 14185 Dallas Parkway, Suite 400, Dallas, Texas 75254.

10.    The individual Defendants and entity Defendants named herein all reside in Madison County, Mississippi and are employed by the City. Defendants may be served with process pursuant to the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction over the parties because all Defendants reside or operate within the borders of Madison County, Mississippi.

12.    This Court has original jurisdiction over Copart's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over Copart's state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court is a proper venue because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

### I.    Copart's Business and Operations

14.    Copart is a company that provides asset liquidation services to institutional, commercial, and private owners of used – damaged and undamaged, operable and inoperable – vehicles, trailers, watercraft, and powersports, industrial and construction machinery and equipment ("Assets"). Copart is a global leader in online auto auctions, operating in the United States, Canada, the United Kingdom, the Republic of Ireland, India, Brazil, Germany, the United Arab Emirates, Oman, Bahrain, and Spain.

15.    Most of Copart's inventory comes from top-tier insurance companies, licensed dealers, financial institutions, charities, municipalities, and fleet operators. Copart's liquidation services include short-term storage and sale of Assets, as well as all receiving, shipping, lien sale, and administrative activities necessary to provide its liquidation services.

16.    Copart is not a "junkyard" or "pull-a-part" operation. On the contrary, all Assets are liquidated intact – meaning that absolutely no dismantling, draining of fluids, crushing, burning, disposal, or selling of parts takes place at a Copart facility.

### A.  Typical Facilities and Asset Sales

17.    A typical Copart facility consists of an office building, customer parking, a shipping and receiving area, and a short-term storage area for the Assets. After being received at a Copart facility, Assets are inspected, photographed, catalogued, and placed in ground-level short-term storage designed for quick retrieval. Assets are never stacked, and they remain in short-term storage for an average of only 50 to 60 days.

18.    After being placed in short-term storage, Assets are listed for sale through Copart's proprietary online auction-style website and mobile apps for purchase by registered members.

Members are primarily licensed dealers, dismantlers, rebuilders, and exporters but are sometimes end users. Copart has more than 950,000 members in more than 170 countries. All offers to purchase Assets are submitted and selected electronically, without the use of a live auctioneer.

19.     Although members are provided the opportunity to inspect Assets at a Copart facility, most Asset inspections are limited to viewing images and information made available online. Members may electronically submit preliminary offers from (a) anywhere in the world via a personal computer or mobile device with internet access, or (b) a limited number of computer kiosks located at the Copart facility, where available. The high preliminary offer is carried over to an online virtual sale, during which members may submit offers electronically only from a personal computer or mobile device.

20.     Assets are sold to the member with the highest offer, who then arranges for pickup and transportation of the Assets from the Copart facility. Payment for sold Assets may be made electronically, via wire-transfer, or in person at a facility. Titles to sold Assets are either picked up by the buyer along with the sold Assets or mailed by Copart to the buyer.

*B. Copart's Real Estate in the City of Canton*

21.     On or about May 26, 2020, Copart executed a contract to purchase the Property for purposes of opening a Copart Asset sale facility. A true and correct copy of the Purchase and Sale Agreement is attached hereto as **Exhibit 1**. The Property is comprised of two parcels totaling approximately 15.76 acres, located at 141 Yandell Avenue, Canton, Mississippi 39046 (Parcels No. 093D-18C-076/01.00 (6.8 acres) and 093D-18C-078/00.00 (8.96 acres)). Copart purchased the Property from LaCour Kiln Service, Inc., which, upon information and belief, operated a commercial wood-drying facility on the entirety of the Property for nearly 50 years prior to the sale to Copart.

22.    Most of the Property lies within the City's I-2 Heavy Industrial District, which permits as "by right" all uses "which are not potentially hazardous or offensive to neighboring land uses due to the emission of dust, gas smoke, noise, fumes, odors, vibrations or other objectionable influences" except manufacturing uses of the "wet type," which are permitted only as conditional uses. A true and correct copy of the I-2 Heavy Industrial zoning regulation is attached hereto as **Exhibit 2**. Other special exceptions/conditional uses in the I-2 Heavy Industrial District include "[j]unk yards and auto salvage/wrecking yards." *Id*. A small portion on the west side of the Property is currently zoned R-4 Multi-Family Residential, but that portion was, and has been, historically used as part of the commercial kiln facility operated by the seller since the early 1970's.

23.    As a term of the Purchase and Sale Agreement, Copart had a 120-day feasibility period to study or make inquiry as to the Property's suitability for Copart's intended use, including seeking a "Use Approval" from the appropriate city or county officials. Ex. 1, Section 5.5. On May 15, 2020, in connection with pre-contractual due diligence efforts, Copart requested a zoning assessment from the Zoning Administrator[3] to confirm, among other things, whether Copart's proposed use of the Property conformed with the permitted uses in Canton's I-2 Heavy Industrial zoning district, or whether a special exception would be required. A true and correct copy of Copart's zoning letter request and the Zoning Administrator's response are attached hereto as **Exhibit 3.**

24.    Copart's zoning assessment request proposed the following use for the Property:

> Outdoor storage of used, damaged and undamaged, operable and inoperable automobiles, trucks, other vehicles, trailers, boats and construction/farm equipment and machinery, for wholesale online and retail auction, with accessory office, shipping/receiving and customer parking, for which the

---

[3]    Under the City of Canton's Uniform Development Code ("CUDC"), the individual who holds the title of Zoning Administrator also serves as the Business Official by virtue of position. At the time, Mr. Jimmy Smith held this position.

following State of Mississippi licensing will likely be held:  Used Motor
Vehicle Dealer, dismantler, motorcycle, trailer, heavy truck."

*Id.* at 4.  The Zoning Administrator initially responded to Copart's request informally on or around

June 1, 2020 and opined that the use proposed by Copart "would require a Special Exception for

the I-2 district." *Id.*

25.     After being provided more thorough and detailed information from Copart

representatives about the nature and scope of the Property's intended use, including Copart's

written Statement of Operations (a copy of which is attached hereto as **Exhibit 4**), the Zoning

Administrator issued an amended formal assessment on July 6, 2020 confirming that Copart's

intended use of the Property is "in conformity with the City of Canton's [Uniform Development

Code] and Comprehensive Plan." A true and correct copy of the July 6, 2020 zoning letter is

attached hereto as **Exhibit 5** (the "Zoning Letter"). The Zoning Administrator further confirmed

that Copart's intended use of the Property is "permitted by right in accordance with the City's

UDC, Section 1.410 Heavy Industrial District (I-2)." *Id.*

26.     Relying on the Zoning Administrator's zoning assessment, as memorialized in the

Zoning Letter, Copart closed on the Property in January 2021 for a purchase price of $350,000.00.

Shortly thereafter, in April 2021, Copart secured requisite work and demolition permits from the

City and began the substantial task of cleaning off the Property and removing the remnants of the

prior kiln business.

27.     On May 20, 2021, without notice or explanation, the City issued a cease-and-desist

letter to Copart, ordering it to stop all clean-up activities and business operations on the Property.

A true and correct copy of the cease-and-desist letter is attached hereto as **Exhibit 6.** The City

cited no basis whatsoever for the cease-and-desist letter.

28.     Copart learned informally that the Mayor and Board directed the cease-and-desist letter to issue because they suspected that the Property would be used a "junkyard" and would become an eyesore, although Copart was never formally or officially advised as such by the City. At the time, Copart had not applied for a privilege license and had taken no other steps toward operating a business other than cleaning up the Property. Nonetheless, the Zoning Administrator summoned Copart to a June 1, 2021 meeting of the Mayor and Board to discuss the matter. A true and correct copy of the correspondence requesting the meeting is attached hereto as **Exhibit 7**.

29.     In an effort to prospectively allay the Mayor and Board's concerns, Copart appeared at the June 1, 2021 meeting and presented information and materials detailing the nature and scope of its actual business activities, including a PowerPoint presentation detailing its global business operations and its intended use of the Property. After Copart's presentation, the Mayor and Board retreated to executive session to consider the information presented.

30.     On June 9, 2021, the Zoning Administrator informed Copart by email that the Mayor and Board voted in executive session to repeal the cease-and-desist letter and to permit Copart to continue cleaning up the Property, but Copart "may not operate a business" on the Property.  The City offered no explanation or legal support for its position, which was squarely at odds with the Zoning Letter confirming that Copart's intended use conformed with the permissible uses in the I-2 district. A true and correct copy of the Zoning Administrator's correspondence to Copart is attached hereto as **Exhibit 8.**

31.     After cleanup was completed, Copart needed to construct a perimeter fence around the Property to deter trespassing and to limit Copart's liability exposure and potential vandalism. The perimeter fence would also be necessary for Copart's future business operations, to provide needed security and to preserve and protect Assets ultimately stored on the Property.

32.    The CUDC provides that every landowner in the City of Canton has a right to have a fence around his or her property. *See* CUDC § 1.36.03. Copart contacted the Zoning Administrator for guidance on the requisite process for obtaining a permit to build its perimeter fence. The Zoning Administrator advised Copart to submit a fence permit application to the Canton Architectural Review Board ("CARB") and, on August 16, 2021, forwarded the form application to Copart for completion and submission. A true and correct copy of the correspondence forwarding the application is attached hereto as **Exhibit 9.** On or about August 16, 2021, Copart applied to the CARB for architectural approval of its perimeter fence. *See* February 22, 2022 correspondence to the CARB, attached hereto as **Exhibit 10.**

33.    Initially, the Zoning Administrator – who also serves as head of the CARB – would not accept the requisite $100 application fee for the permit application because he wanted to first meet with the Mayor about the project. Three days later, on August 19, 2021, the Zoning Administrator emailed Copart to advise that he'd "got[ten] in touch with the Mayor & he made it clear to me that he does not want to see a fence up on the Copart site." A true and correct copy of that correspondence is attached hereto as **Exhibit 11.**  As with the prior cease-and-desist letter, the City provided no explanation or legal authority to support the Mayor's arbitrary position.

34.    Notwithstanding the Mayor's opposition, Copart requested that its permit application be routed through the appropriate process and considered by the CARB and requested that any denial (and reasons for same same) be provided in writing.

35.    Rather than place the fence permit application on the CARB agenda, the Zoning Administrator set the application for a September 21, 2021 hearing before the Mayor and Board, which was contrary to the Administrator's prior directives and the procedure set forth in the

CUDC. Copart had to request that the matter be removed from the Board agenda and placed on the agenda for the CARB, which was the appropriate agency to consider the permit application.

36.    The CARB finally heard Copart's fence permit application at its February 23, 2022 regular meeting, where it was unanimously approved. A true and correct transcript of that CARB meeting is attached hereto as **Exhibit 12**. It was confirmed during the CARB meeting that the Board had notice of the pending fence permit and the CARB meeting, but no Board member appeared or otherwise lodged any objection. *Id*. at 41.

37.    After the CARB approved the fence permit, Copart was informed by the City's Building & Permit Manager that it would have to satisfy additional requirements for the fence permit to be issued, including obtaining a certificate of liability insurance naming the City as an additional insured and procuring a $5,000.00 construction bond – both of which Copart promptly obtained. A true and correct copy of the Certificate of Liability Insurance and License and Permit Bond are attached hereto as composite **Exhibit 13**.[4] During that process, Copart had multiple communications and in-person meetings with the Zoning Administrator, the City's Administrative Officer, and the City's Building & Permit Manager about the fence permit; at no point was Copart made aware of any opposition by the Mayor, Board, or other city officials to Copart's fence permit or of any irregularities with the permit or the process through which it was obtained.

38.    Copart's permit for construction of its perimeter fence was ultimately issued by the Building Official in May 2022.[5] *See* City of Canton Building Permit Card, Permit No. 21-106, and

---

[4]    Copart was also instructed by the City to contact the Canton Municipal Utilities ("CMU") department to arrange for power to be "pulled" to the Property, even though Copart was only constructing a perimeter fence at the time. Nonetheless, Copart met with the CMU and provided all necessary information for an 811 assessment to be conducted and for power to be run to the Property

[5]    The fence construction permit was dated April 7, 2022 – the date the Building Official initially intended to issue the permit and began filling out the permit card. The permit issuance was paused briefly while Copart processed and paid the permit fee, after which the Building Official issued the back-dated permit card to Copart.

receipt for payment of permit fee, attached hereto as **Exhibit 14**. Shortly thereafter, Copart began constructing its CARB-approved perimeter fence. As part of its construction efforts, Copart purchased and transported over $126,000.00 worth of fencing materials to the Property.

39.    On June 7, 2022, less than a week into construction of the fence, Copart was served with a stop-work order. A true and correct copy of the stop-work order is attached hereto as **Exhibit 15.** The order cited Copart for a violation of "29.19 Permit Required", which it described as follows: "It shall be unlawful for any person to dig into, open, or otherwise cause excavation to be made into any street or sidewalk within this city without first obtaining a permit so to do from the city engineer."[6] The stop-work order also had "notes," which read:

> This is a Stop Work Notice. during [sic] board meeting it was brought up that COPAR [sic] had been told they were not going to be allowed to operated [sic] on the land they had purchased.  the [sic] ARB approved the fence plans only.  Ms. Amos told me that they were good to issue a permit for the fence. This was confusion on her end due to emails that had been sent to her say it was approved before it went to the Mayor and board of aldermen.

40.    At the time the stop-work order was served, Copart still had over $80,000 worth of raw, unused fence materials at the Property. To comply with the stop-work order without risking theft of its materials, Copart had to ship the materials to an off-site location at a cost of approximately $3,200.00. Receipts documenting the expenses incurred by Copart for the fence materials are attached hereto as **Exhibit 16.**

41.    Copart did not dig into, open, or otherwise excavate into a city street or sidewalk while constructing the perimeter fence. Consequently, on June 21, 2022, Copart appealed the stop-work order to the City Zoning Commission, pursuant to Section 1.600.21(B) of the CUDC. A true and correct copy of Copart's appeal correspondence is attached hereto as **Exhibit 17**. The narrow

---

[6]    The cited provision is not found within the CUDC but appears to be from a version of a code of ordinances enacted in 1958. Neither the code of ordinances nor the cited provision is currently available on the City's official website, and it is unclear whether the cited provision is current or binding on property owners in Canton.

issue on Copart's appeal was whether it was excavating into a city street or sidewalk while constructing its perimeter fence, which was the only violation cited in the stop-work order

42.    Copart's appeal was initially heard by the Zoning Commission on August 8, 2022. Numerous members of the community were in attendance, as was Alderman Rodriguez Brown, which seemed unusual given the nature of the appeal and the narrow technical issue to be considered by the Commission. Nonetheless, Copart presented a survey and other evidence showing that its fence line was not encroaching on a city street or sidewalk and that Copart was not digging or excavating into such while constructing its perimeter fence. [7] A true and correct copy of the August 8, 2022 hearing transcript is attached hereto as **Exhibit 18**. Moreover, the Zoning Administrator admitted that the City had no evidence to support the issuance of the stop-work order, which should have ended the inquiry.

43.    Despite being keenly aware of the limited scope of Copart's appeal, the Zoning Commission nonetheless opened the floor to Alderman Brown and other attendees for comment on issues completely unrelated to the stop-work order or Copart's appeal, including whether Copart's use of the Property required a special exception in the I-2 Heavy Industrial District. Alderman Brown claimed that Copart "was not welcome" in the City and that Canton "didn't want them here." He also admitted that the Mayor and Board were opposed to Copart's presence in Canton from the outset and that they had instructed the Zoning Administrator early on not to issue any permits to Copart, even before Copart had actually made application. Alderman Brown further admitted that

---

[7]    The relevant evidence on this issue was first provided to the Zoning Commission on June 21, 2022, approximately six weeks prior to the August 8, 2022 meeting.

the City had recently fired the Zoning Administrator who determined that Copart's use was "by right" in the I-2 Heavy Industrial District as a result of his determination.[8]

44.    In short, Alderman Brown publicly confirmed that the Mayor and Board blatantly infringed on the Zoning Administrator's exclusive authority to make zoning determinations under the CUDC and knowingly attempted to thwart Copart's efforts to develop the Property.

45.    At the conclusion of the public statements, the Zoning Commission advised Copart that it should preemptively seek a declaration as to the propriety of the City's Zoning Letter, even though the Zoning Administrator's assessment remained unchallenged and had not been revoked. The Commission also refused to rule on Copart's appeal at the time, and instead demanded that Copart submit additional evidence from an engineer so that it could determine whether the encroachment infraction cited in the stop-work order had occurred. The Zoning Commission continued the hearing until September 12 to allow Copart to obtain the requested evidence.

46.    Less than three hours before the hearing was set to resume on September 12, the City submitted a "supplemental response" to Copart's appeal, acknowledging, for the first time, that the violation cited in the stop-work order was, in fact, illegitimate. The supplemental response listed a host of new reasons to support the stop-work order, including that Copart's intended use of the Property as a "junkyard" required a special exception. A true and correct copy of the Supplemental Response and accompanying email correspondence is attached hereto as **Exhibit 19**.

47.    When the hearing resumed on September 12, 2022, Copart presented additional evidence, including an updated survey and sworn testimony from an independent engineer,

---

[8]    The City also recently fired the City Administrative Official who assisted Copart with obtaining its fence permit. Upon information and belief, her employment was terminated because she successfully assisted Copart.

showing that its proposed perimeter fence did not encroach upon any existing city right-of-way or easement. The Zoning Commission refused to consider Copart's evidence and instead made its own lengthy record on issues that it had previously acknowledged and conceded were outside the scope of Copart's narrow appeal, including its unauthorized and erroneous determination that Copart was a "junkyard" whose intended use of the Property required a special exception.

48.    Copart was given no advance notice of the Zoning Commission's decision to improperly shift focus from the limited (and admittedly illegitimate) violation cited in the stop-work order to the baseless zoning issue proffered by the City for the first time less than three hours earlier. Additionally, none of the "evidence" presented by the Zoning Commission was provided to Copart prior to the meeting, even though it was clearly prepared well in advance.

49.    At the conclusion of its "evidence," the Zoning Commission denied Copart's appeal on the basis that Copart's intended use of the Property required a special-use exception to be in conformance with zoning requirements. The Zoning Commission issued a written opinion memorializing its denial of Copart's appeal on September 19, 2022 (the "Opinion"). A true and correct copy of the Opinion is attached hereto as **Exhibit 20**.

50.    The Zoning Commission has no authority under the CUDC to reconsider a zoning determination by the Zoning Administrator unless that determination is unfavorable to the petitioner. The Zoning Commission's actions were a violation of the CUDC and the Zoning Administrator's vested authority, and they are reflective of and consistent with Defendants' predetermined goal to keep Copart out of Canton at any cost, even in the absence of any legitimate legal basis for doing so.

51.    On September 15, 2022, Copart appealed the Zoning Commission's refusal to lift the stop-work order to the Board. The hearing before the Board was initially set to take place on

November 15, 2022. Copart appeared before the Board on that date, but the Board declined to hear Copart's appeal at that time because the City had failed to provide public notice of the hearing, which the Board believed was required.

52.    The matter was reset for a special meeting of the Board a month later, on December 13, 2022. A true and correct copy of the hearing transcript is attached hereto as **Exhibit 21**. Like the Commission, the Board ignored Copart's ample and undisputed evidence on the encroachment/excavation issue and instead invited public comment on issues that were far outside the limited scope of Copart's appeal, which was patently improper and grossly prejudicial to Copart.

53.    After hearing from the public, the Board denied Copart's request to lift the stop-work order unless and until Copart completes the Zoning Commission's special-use exception application process.

54.    It has become abundantly clear that Copart's only avenue for obtaining fair and reasoned consideration of its operations and applications, including those related to its proposed perimeter fence, is through the judicial system. Copart has invested more than $600,000 in the Property to date with the expectation that it can reasonably rely on City officials to fairly and competently do their job, such that Copart can one day enjoy the Property like any other property owner in the City of Canton. Suffice to say, Copart's expectation has not been met.

55.    The City has no legal basis to prevent Copart from completing the construction of its perimeter fence. In addition, the City's demonstrated, arbitrary hostility towards Copart on the basis of the City's erroneous interpretation of Copart's intended business operations has placed Copart in a costly holding pattern, stripping it of its ability to move forward with the completion of its Canton facility. The City's actions make clear that any processes or approvals required for

Copart to complete preparations and operate its asset liquidation facility will not be fairly considered. Defendants' baseless refusal to allow Copart to complete the construction of its perimeter fence to protect and continue preparing its Property for business operations, coupled with City's recent questioning of the propriety of Copart's zoning compliance letter, leave Copart with no other option than to seek relief from this Court.

56.    Copart has suffered substantial financial loss, and with each day that Copart cannot complete construction of its perimeter fence and continue with efforts to develop the Property, Copart's expenses are compounded and its ability to earn income is further delayed.

## COUNT I: DECLARATORY JUDGMENT

57.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

58.    Chief among the Zoning Administrator's duties is interpreting the CUDC and the City's Comprehensive Plan. The Zoning Administrator is vested with authority to make decisions regarding the general intent or specific meaning of CUDC provisions:

> The Building and Development Director is responsible for administration, coordination, and maintenance of the zoning ordinance as well as other sections of this code. With these responsibilities, he is designated as the Zoning Administrator.
>
> In the event there is a question as to the general intent or specific meaning of any provision of the **Zoning Ordinance** text, or of the boundaries or district designations or other matters relating to the **Official Zoning Map**, the Zoning Administrator shall have the power to make such administrative decisions and interpretation.

CUDC, at p. 171, Section 1.600.02 (emphasis in original).

59.    Pursuant to this authority, the Zoning Administrator considered the nature and scope of Copart's intended business operations at the Property and correctly concluded that the proposed use conforms with the CUDC and the City's Comprehensive Plan. The Zoning Administrator reasonably and rightly determined that Copart's proposed use for the Property is

permitted by right in accordance with the City's I-2 Heavy Industrial District, and that Copart's proposed use of the Property does not fall within any of the categorized uses set forth in CUDC Section 1.410.3 that require special exceptions or conditional-use approval.

60.    The Zoning Administrator has the authority to interpret the City's zoning ordinances and the discretion to determine whether any proposed use falls within the scope of Canton's respective zoning districts. The Zoning Administrator's July 6, 2020 determination that Copart's proposed use conformed with the permissible, by-right uses in the I-2 Heavy Industrial District was reasonable, was not arbitrary, and was well within his authority and discretion under the CUDC.

61.    Accordingly, Copart requests the Court issue a declaration that (1) Copart's intended use of the Property conforms with the CUDC and the City's Comprehensive Plan, (2) Copart's intended use is permitted by right in the I-2 Heavy Industrial District, and (3) the Zoning Administrator's prior declaration of the same by letter dated July 6, 2020 is true, correct, and binding on Defendants.

## COUNT II: WRIT OF MANDAMUS

62.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

63.    Copart has, in good faith, made a substantial change of its position in relation to the Property, made substantial expenditures on and in relation to the Property, and incurred substantial expenses and other obligations as it relates to the Property in reliance on representations by the Zoning Administrator, a city official.

64.    Copart's rights to continue and complete construction of its fence, and to otherwise enjoy and operate the Property, have vested.

65.    The City's refusal or failure to allow Copart to obtain permits and otherwise prepare to operate the Property without obtaining a special exception is arbitrary, capricious, and unlawful, and such refusal or failure has no conceivable or rational relationship to the health, safety, morals, or general welfare of the inhabitants of the City.

66.    The City's arbitrary and improper actions have damaged Copart, in that Copart is unable to complete its perimeter fencing or economically develop the Property in accordance with its planned and approved use.

67.    Accordingly, Copart prays the Court will issue a writ of mandamus demanding and directing Defendants to take such actions as are reasonably necessary to issue Copart all permits necessary for Copart to complete its construction on the Property and begin operations.

## COUNT III:  EQUITABLE/PROMISSORY ESTOPPEL

68.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

69.    The City misled Copart, through its representations directly to Copart about the conformity of its intended use for the Property and its fence permit, into believing that Copart would be permitted to construct its perimeter fence, develop the Property, and ultimately operate a business thereon without applying for a special exception.

70.    Copart detrimentally relied upon the City's representations and actions to initially purchase the Property and then thereafter make a substantial financial investment to clean off the Property and begin construction of a perimeter fence on the Property.

71.    The City intended for Copart to rely on, or should have known that Copart would rely on, the review, interpretation, and decision-making of the Zoning Administrator and the CARB when assessing whether to purchase the Property and proceed with initial development of the Property for business purposes.

72.    Copart has been, and would be further, materially harmed if the City is now permitted to prevent Copart from completing its efforts to one day operate on its Property.

73.    Thus, Copart requests that the City be estopped from interfering with or prohibiting Copart's efforts to construct its perimeter fence and that Copart be allowed to reasonably utilize the Property so long as it complies with other orders, rules, or regulations of the City pertaining to the construction, erection, development, completion, and maintenance of Copart's business.

## COUNT IV: VIOLATION OF SUBSTANTIVE DUE PROCESS

74.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

75.    Defendants' refusal to lift the stop-work order and their continuous and purposeful efforts to limit or prohibit Copart from using and enjoying the Property, including the City's efforts to impede the construction of a perimeter fence around the Property, were and are arbitrary, capricious, unreasonable, illegal and without substantial relation to public health, safety, morals, or general welfare. Defendants' actions are not rationally related to any legitimate government interest, but rather are targeted to deprive a particular party – Copart – of its right to use and enjoy the Property.

76.    Defendants wrongful and illegal acts interfere with Copart's property rights and therefore violated Copart's substantive due process rights under the Fifth and Fourteenth Amendments to the United State Constitution pursuant to 42 U.S.C. § 1983 and Article 3, § 14 of the Mississippi Constitution.

77.    The deprivation of Copart's rights secured to it by the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, § 14 of the Mississippi Constitution was inflicted under color of state law, pursuant to official practices, customs, or policies.

78.    As a direct and proximate cause of Defendants' continuous and purposeful efforts, Copart has suffered and will continue to suffer significant economic damages including but not limited to the costs of fence materials and labor, relocation and storage of fence materials, engineering and legal fees—all of which Copart is entitled to recover in an amount to be determined by a trier of fact.

79.    Moreover, Copart is entitled to punitive damages on its substantive due process claim, as Defendants' conduct involved an intentional disregard of, or at least a reckless or callous indifference to, Copart's state and federally protected rights.

80.    Copart is also entitled to a declaration from the Court recognizing the foregoing violation of its right to substantive due process under the United States Constitution and Mississippi Constitution based on Defendants' interference with Copart's rights to use and enjoy the Property and refusal to lift the stop work order.

81.    Copart is further entitled to injunctive relief prohibiting Defendants from further violating its substantive due process rights.

### COUNT V: VIOLATION OF PROCEDURAL DUE PROCESS

82.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

83.    The Zoning Commission's Opinion and the Board's December 13, 2022 ruling denying Copart's appeal to lift the stop work order illegally modify or circumvent the CUDC's processes and procedures for deciding, appealing, or otherwise amending zoning determinations.

84.    Defendants' consideration and determination of the Property's zoning classification or status within the context of Copart's limited appeals deprived Copart of the rights, procedures, and protections attendant to such considerations under the CUDC and Mississippi law, and deprived Copart of a meaningful opportunity to be adequately heard on the issue or a meaningful

opportunity to contest it.  Such acts violated Copart's procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 and Article 3, § 14 of the Mississippi Constitution.

85.    The deprivation of Copart's rights secured to it by the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, § 14 of the Mississippi Constitution was inflicted under color of state law, pursuant to official practices, customs, or policies.

86.    As a direct and proximate cause of Defendants' continuous and purposeful efforts, Copart has suffered and will continue to suffer significant economic damages and is entitled to recover an amount of monetary damages to be determined by a trier of fact.

87.    Moreover, Copart is entitled to punitive damages on its substantive due process claim, as Defendants' conduct involved an intentional disregard of, or at least a reckless or callous indifference to, Copart's state and federally protected rights, and/or is motivated by bad faith motive or intent.

## COUNT VI: VIOLATION OF EQUAL PROTECTION

88.    Copart incorporates each of the preceding paragraphs as if fully set forth herein.

89.    Under the Fourteenth Amendment to the U.S. Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The purpose of the Equal Protection Clause is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination by the State's duly constituted agents.

90.    Copart, as a class of one, was intentionally treated differently from similar entities and individuals with respect to its fence permit application and the construction of its perimeter fence, and with respect to the interpretation, application, or enforcement of zoning ordinances and regulations. The City's intentionally different treatment of Copart lacked a rational basis.

91.     Copart has been and will continue to be economically injured by the City's arbitrary and capricious conduct.

92.     The City's unconstitutional conduct has damaged and will continue to damage Copart, such that it is entitled to preliminary and permanent injunctive relief, declaratory relief, and monetary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Copart prays for the following:

1.      A declaratory judgment confirming (a) Copart's intended use of the Property conforms with the CUDC and is permitted by right in the City's I-2 Heavy Industrial District and (b) the Zoning Commissioner's prior zoning classification and compliance determination to that end was correct and is a vested right held by Copart;

2.      A preliminary and permanent injunctive relief that precludes Defendants from arbitrarily obstructing Copart's attempts to complete construction of its perimeter fence;

3.      A writ of mandamus compelling the City to timely and fairly consider Copart's building permit application(s) and to issue the requisite permits for completion of Copart's project;

4.      An order that the City be estopped from interfering with or prohibiting Copart's efforts to construct its perimeter fence, and that Copart be allowed to reasonably utilize the Property so long as it complies with other orders, rules, or regulations of the City pertaining to the construction, erection, development, completion, and maintenance of its business;

5.      An award of compensatory damages, reflecting those damages incurred by Copart as a result of Defendants' wrongful conduct, and punitive damages in an amount adequate to deter similar wrongful conduct by Defendants in the future;

6.      An expedited hearing on the requested relief; and

6.    Such other and necessary relief as is appropriate.

**RESPECTFULLY SUBMITTED**, this the 16th day of March 2023.

*/s/ Stevie F. Rushing*
Jason Fortenberry (MS Bar #102282)
Stevie F. Rushing (MS Bar #105534)
BRADLEY ARANT BOULT CUMMINGS LLP
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com
srushing@bradley.com

*Attorneys for Plaintiff*